**BURSOR & FISHER, P.A.**
Stefan Bogdanovich (State Bar No. 324525)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail: sbogdanovich@bursor.com

**BURSOR & FISHER, P.A.**
Philip L. Fraietta (State Bar No. 354768)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-Mail: pfraietta@bursor.com

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA—WESTERN DIVISION

| | |
|---|---|
| RAHUL SAWHNEY, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>AXS GROUP LLC,<br><br>Defendant. | Case No.    2:24-cv-8866<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

Plaintiff Rahul Sawhney brings this action on behalf of himself, and all others similarly situated against AXS Group LLC ("AXS" or "Defendant"). Plaintiff makes the following allegations pursuant to the investigation of his counsel and based upon information and belief, except as to the allegations specifically pertaining to himself, which are based on personal knowledge.

**<u>NATURE OF THE ACTION</u>**

1.      For over two years, Defendant has been nickel and diming New Yorkers buying tickets to various entertainment events in the state of New York in violation of New York Arts & Cultural Affairs Law § 25.07(4) ("ACAL"). When a consumer browses Defendant's AXS.com website or AXS mobile application, he or she is quoted a fee-less price, only to be ambushed with hefty service charge at the final checkout screen after clicking through the various screens required to make a purchase. This cheap-trick—sometimes referred to as drip-pricing—enables Defendant to swindle substantial sums of money from their customers.

2.      To stop this hustle, in the summer of 2022, New York lawmakers passed Arts and Cultural Affairs Law § 25.07(4), which provides that "every platform that facilitates the sale or resale of tickets … shall disclose the total cost of the ticket, inclusive of all ancillary fees that must be paid in order to purchase the ticket." "Such <u>disclosure of the total cost and fees shall be displayed in the ticket listing <i>prior to</i> the ticket being selected for purchase</u>." *Id*. (emphasis added). And "[t]he price of the ticket shall not increase during the purchase process." *Id.* This latest version of the law went into effect August 29, 2022. *See* Exhibit A.

3.      For these reasons, Plaintiff seeks relief in this action individually, and on behalf of all other ticket purchasers for events in the state of New York for actual and/or statutory damages, reasonable attorneys' costs and fees, and injunctive relief under New York Arts and Cultural Affairs Law § 25.33.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**JURISDICTION AND VENUE**

4.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members, and the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs, and at least one class member is a citizen of a state different from Defendant. Defendant sold at least 100,000 tickets to various places of entertainment in the state of New York through its website or mobile application using the AXS Marketplace feature during the applicable class period, and is liable for a minimum of fifty dollars in statutory damages (or more in actual damages) for each ticket sold.

5.     This Court has personal jurisdiction over Defendant because it maintains its principal place of business in California.

6.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant's principal place of business is located in this District.

**PARTIES**

7.     Plaintiff Rahul Sawhney is an individual consumer who, at all times material hereto, was a citizen and resident of Port Washington, New York.  On October 2, 2024, Plaintiff purchased a ticket to see an October 11, 2024 Brett Young concert through Defendant's website, AXS.com using the AXS Marketplace.  The transaction flow process he viewed on Defendant's website was substantially similar as that depicted in Figures 1-12 of this Complaint.

8.     AXS Group LLC is a Delaware limited liability company with its principal place of business in 425 West 11th Street, Suite 100, Los Angeles, California 90015. AXS owns and operates the AXS.com website and AXS mobile application, which is a platform used to sell tickets to entertainment events taking place in the state of New York.

1

## **RELEVANT FACTUAL ALLEGATIONS**

2      9.      When a consumer visits the AXS.com website, on the main page, he can

3   select various entertainment events in the state of New York or filter events by those

4   taking place in New York.  *See* Figure 1, below.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19



20

21                                            **Figure 1**

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28

1    10.    A consumer can also click on the magnifying glass button on the screen

2 above to search for an event in New York.  If a baseball fan searches for "Yankees,"

3 he sees a list of upcoming games.  *See* Figure 2.



**Figure 2**

11.    After a consumer selects a particular game, he or she is taken to the

AXS Marketplace screen to purchase resale tickets.  *See* Figure 3.



**Figure 3**

1       12.    If a consumer clicks the "VIEW TICKETS" button, he or she is taken to

2  a "SELECT YOUR TICKETS" screen that has list of prices for the various seat

3  around the venue—in this case, Yankee Stadium.  *See* Figures 4 and 5.



**Figure 4**



**Figure 5**

13.    However, these are not accurate ticket prices, because they fail to

disclose the total cost of the ticket, inclusive of all ancillary fees that must be paid, in

1   violation of New York Arts & Cultural Affairs Law § 25.07(4).  This is confirmed

2   when a consumer actually selects a particular ticket for purchase on this "SELECT

3   YOUR TICKETS" screen.  If a consumer selects the Grandstand Outfield 432A,

4   Row 1 ticket and clicks the "$169.00" button on Figure 6, he or she is taken to a

5   ticket review page that shows the total cost of the ticket is actually "$169.00 + Taxes

6   & Fees."  *See* Figures 6 and 7, below.



**Figure 6**

**Figure 7**

14.     This screen also plainly violates New York law.  "Every… platform that facilitates the sale or resale of tickets shall disclose the <u>total cost of the ticket,</u> <u>inclusive of all ancillary fees</u> that must be paid in order to purchase the ticket … <u>prior to the ticket being selected for purchase.</u>"  N.Y. Arts & Cult. Aff. Law § 25.07 (4).  These screens plainly fail to do so.  Worse yet, by bundling its service charge under the misleading label of "Taxes & Fees," Defendant also fails to "disclose in a clear and conspicuous manner the portion of the ticket price stated in dollars that represents a service charge, or any other fee or surcharge to the purchaser."  *Id.*

15.     After the consumer clicks the Checkout button, a "Sign In" widget pops-up prompting the consumer to either sign in or create an account.  *See* Figures 8-10, below and next page.  The "Create Account" screen requires the consumer to input their information and scroll to the bottom of the screen to click the "Create Account" button.  *Id.*



**Figure 8**





**Figure 9**



**Figure 10**

16.     After a consumer either clicks the "Sign In" or "Create Account" buttons in Figures 9 or 10 above, he or she is taken to the final "CHECK OUT" screen, where the "total cost" of the tickets is disclosed for this first and only time. *See* Figure 11, below.  To make matters even worse, this final screen confirms that the prior screen's representation of that the total price was "$169.00 + Taxes & Fees" was both false and misleading, because no "Taxes" are charged at all.



**Figure 11**

17.     To complete the transaction, the site requires the consumer to click the "I agree to the sales terms and conditions" checkbox above the "PLACE ORDER" button.  *See* Figure 11.  Because the dark blue color appears muted, it is difficult to distinguish from the surrounding text and makes it difficult to discern whether it contains a hyperlink.  In any event, if a consumer does click on the hyperlink, he or she receives an error message.  *See* Figure 12, next page.

1
2
3
4
5
6
7



**Figure 12**

8       18.    Days after Plaintiff's counsel began soliciting prospective clients,
9  Defendant appears to have modified the hyperlink so that it now displays *other* sales
10  terms, beyond those specifically enumerated in the text block next to the "I agree"
11  checkbox.

12       19.    The ticket purchase flow remains substantially the same for users of the
13  AXS mobile phone application and also violates New York law. *See below.*

14
15
16
17
18
19
20
21
22
23
24
25
26
27





**Figure 13**                **Figure 14**                **Figure 15**

28





**Figure 16**



**Figure 17**

**Figure 18**



**Figure 19**



**Figure 20**



**Figure 21**



**Figure 22**                    **Figure 23**                    **Figure 24**

## Drip Pricing Tricks Consumers Into Overpaying For Tickets

20.    AXS is one of many online ticket exchange platforms—like Ticketmaster, Eventbrite, or Tick Pick—that offer consumers the ability to purchase tickets to entertainment events online, via its website or its mobile application.

21.    "Drip pricing" is a type of bait-and-switch pricing method that refers to "the practice of advertising only part of a product's price upfront and revealing additional charges later as consumers go through the buying process."[1]

22.    Behavioral economists largely agree that drip pricing causes consumers to overpay, by exploiting people's drive to complete a commenced purchase.[2]   By

---

[1] Mary W. Sullivan, Fed. Trade Comm'n, Econ. Analysis of Hotel Resort Fees (2017), https://www.ftc.gov/reports/economic-analysis-hotel-resort-fees.
[2] Steffen Huck & Brian Wallace, The impact of price frames on consumer decision making: Experimental evidence, at 1-3 (Oct. 15, 2015).

luring people into a transaction with an artificially low price, a website designer can create a sense of commitment from the consumer to the transaction. By making the consumer click through several screens, the website designer forces the consumer to invest time into the transaction. After a seller has introduced surprise fees on the final screen, assuming the consumer even notices the fees, the consumer will still be reticent to leave due to a sense they will incur a loss by abandoning the transaction.

<u>**New York Bans Drip Pricing In Ticket Sales**</u>

23.    Effective August 29, 2022, New York enacted Arts & Cultural Affairs Law § 25.07(4), which provides that "any licensee or other ticket reseller, or platform that facilitates the sale or resale of tickets shall disclose the total cost of the ticket, inclusive of all ancillary fees that must be paid in order to purchase the ticket, and disclose in a clear and conspicuous manner the portion of the ticket price stated in dollars that represents a service charge, <u>or any other fee</u> or surcharge to the purchaser. Such <u>disclosure</u> of the <u>total cost and fees</u> shall be displayed in the ticket listing <u>prior to</u> the ticket being <u>selected for purchase</u>." *Id*. (emphasis added). And "[t]he price of the ticket shall not increase during the purchase process." *Id.*; *Compare with* Figures 4-7 and 11. "Disclosures of subtotals, fees, charges, and any other component of the total price shall not be false or misleading." N.Y. Arts & Cult. Aff. Law § 25.07(4); *Compare with* Figure 7 and ¶ 17.

24.    Shortly after the law was enacted, ticketing websites peppered the State of New York's Division of Licensing Services with questions about the scope of the law. As explained by the Division of Licensing Services, "the ticket purchasing process begins once a consumer visits a ticket marketplace and first sees a list of seat prices." *See* N.Y. Dep't of State, Div. Licens. Servs., *Request for Additional Guidance – New York State Senate Bill S.9461*, attached hereto as **Exhibit A**, at 1. "From the moment the prospective purchaser assesses the [] ticket lists through the final payment … there should be no price increases to the purchaser for the ticket

itself." *Id.* "When a prospective purchaser selects a ticket with full disclosure of the ticket price, the purchaser <u>should not then have to search for the total price</u> of the ticket <u>as the purchaser proceeds through the purchasing process</u>, it should continue to be readily available to the purchaser." *Id.* at 2 (emphasis added).

## CLASS ACTION ALLEGATIONS

25.    **Nationwide Class**: Plaintiff seeks to represent a class defined as all individuals in the United States who purchased electronic tickets to any place of entertainment within the state of New York from Defendant's website or mobile application using the AXS marketplace feature on or after August 29, 2022. Excluded from the Nationwide Class is any entity in which Defendant has a controlling interest, and officers or directors of Defendant.

26.    **New York Subclass**: Plaintiff also seeks to represent a subclass defined as all individuals in the state of New York who purchased electronic tickets to any place of entertainment within the state of New York from Defendant's website or mobile application using the AXS marketplace feature on or after August 29, 2022. Excluded from the New York Subclass is any entity in which Defendant has a controlling interest, and officers or directors of Defendant.

27.    Members of the Nationwide Class and New York Subclass are so numerous that their individual joinder herein is impracticable.  On information and belief, members of the Nationwide Class and New York Subclass number in the hundreds of thousands and possibly millions.  The precise number of Nationwide Class and New York Subclass members and their identities are unknown to Plaintiff at this time but may be determined through discovery.  Nationwide Class and New York Subclass members may be notified of the pendency of this action by mail, email, and/or publication through the distribution records of Defendant.

28.    Common questions of law and fact exist as to all Nationwide Class and New York Subclass members and predominate over questions affecting only

individual Nationwide Class and New York Subclass members.  Common legal and factual questions include, but are not limited to: (a) whether Defendant failed to disclose the total cost of the ticket, including all ancillary fees, prior to the tickets being selected for purchase in violation of New York Arts & Cultural Affairs Law § 25.07(4); (b) whether the displayed price of Defendant's tickets increases during the purchase process in violation of New York Arts & Cultural Affairs Law § 25.07(4) (c) whether Defendant's representation that "Taxes & Fees" would be charged, when, in fact, no Taxes are charged at all, violates New York General Business Law § 349.

29.    The claims of the named Plaintiff are typical of the claims of the Nationwide Class and New York Subclass in that the named Plaintiff and the Nationwide Class and New York Subclass sustained damages as a result of Defendant's uniform wrongful conduct, based upon Defendant's failure to disclose the total cost of its tickets, including Defendant's service charges, throughout the online ticket purchase process.

30.    Plaintiff is an adequate representative of the Nationwide Class and New York Subclass because his interests do not conflict with the interests of the Nationwide Class and New York Subclass members he seeks to represent, he has retained competent counsel experienced in prosecuting class actions, and he intends to prosecute this action vigorously.  The interests of Nationwide Class and New York Subclass members will be fairly and adequately protected by Plaintiff and his counsel.

31.    The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Nationwide Class and New York Subclass members.  Each individual Nationwide Class and New York Subclass member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability.

Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.  Individualized litigation also presents a potential for inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability.  Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

**COUNT I**
**New York Arts & Cultural Affairs Law § 25.07**
**(On Behalf Of The Nationwide Class and New York Subclass)**

32.    Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

33.    Plaintiff brings this claim individually and on behalf of the members of the Nationwide Class and New York Subclass against Defendant.

34.    Defendant AXS is a "licensee or other ticket reseller, or platform that facilitates the sale or resale of tickets" to a "place of entertainment," because it owns, operates, and controls the AXS.com website and mobile application, both of which are places where consumers can purchase tickets to places of entertainment.  "'Place of entertainment' means any privately or publicly owned and operated entertainment facility such as a theatre, stadium, arena, racetrack, museum, amusement park, or other place where performances, concerts, exhibits, athletic games or contests are held for which an entry fee is charged."  N.Y. Arts & Cult. Aff. Law § 25.03(6) (emphasis added).  "Entertainment' means all forms of entertainment including, but not limited to, theatrical or operatic performances, concerts, motion pictures, all forms of entertainment at fair grounds, amusement parks and all types of athletic competitions including football, basketball, baseball, boxing, tennis, hockey, and any

other sport, and all other forms of diversion, recreation or show." N.Y. Arts & Cult. Aff. Law § 25.03(1) (emphasis added).

35.    Defendant violated New York Arts & Cultural Affairs Law § 25.07(4) by failing to disclose the "total cost of a ticket, inclusive of all ancillary fees that must be paid in order to purchase the ticket" after a ticket is selected, as depicted in Figures 4 through 7 of this Complaint.

36.    Defendant also violated New York Arts & Cultural Affairs Law § 25.07(4) by increasing the price of its tickets during the purchase process, as depicted in Figures 4-7 and 11 of this Complaint.

37.    Defendant's "service charge" is an "ancillary fee[] that must be paid in order to purchase the ticket." N.Y. Arts & Cult. Aff. Law § 25.07(4).

38.    On October 2, 2024, Plaintiff a ticket to see Brett Young in concert on Defendant's website, AXS.com, using AXS marketplace, and was forced to pay Defendant's service charge. Plaintiff was harmed by paying this unlawfully applied service charge. Because the total cost of the ticket was not disclosed to Plaintiff at the beginning of the purchase process, the resulting service charge that was applied is unlawful pursuant to New York Arts & Cultural Affairs Law § 25.07(4).

39.    Plaintiff was also harmed by not having the total cost of his tickets disclosed upfront at the start of the purchase process. By not knowing the total cost of his tickets before Plaintiff selected his tickets for purchase from Defendant, Plaintiff could not shop around for tickets from other ticket sellers like EventBrite, or Tick Pick, just to name a few. As such, Plaintiff had no way of knowing whether he was getting the best deal his money could buy. By hiding its service charges, Defendant was able to reduce price competition and cause consumers like Plaintiff to overpay.

40.     Plaintiff and Class members relied on Defendant's false and misleading representations that the cost of the tickets did not include fees in choosing to purchase their tickets.

41.     Defendant's aforementioned deceptive practices tricked Plaintiff and Class members into paying Defendant's exorbitant service charges.  But for Defendant's deceptive trade practices, Plaintiff and class members would have either bought tickets from another ticket seller or reseller, or been willing to pay substantially less for them.  Had Defendant transparently disclosed it charges hefty service charges, Plaintiff and Class members likely would have purchased tickets to the exact same event from another website, like TickPick or MegaSeats, which do not charge any service fees.  *See, e.g.*, https://www.tickpick.com/; https://www.megaseats.com/.  According to TickPick, "[t]he first price you see for a ticket on TickPick is the price charged for that ticket[,]" which does not include "hidden fees, ever."[3]

42.     At the time Plaintiff purchased his tickets, he was not aware that Defendant's service charge was unlawful under the New York Arts & Cultural Affairs Law.  Plaintiff was not browsing websites in search of legal violations and, indeed, had no pre-existing relationship with his counsel prior to purchasing his tickets.  Plaintiff was instead browsing Defendant's website because he sincerely intended to purchase tickets, and he did, in fact, purchase those tickets.

43.     On behalf of himself and members of the Nationwide Class and New York Subclass, Plaintiff seeks to enjoin the unlawful acts and practices described herein, to recover his actual damages or fifty dollars, whichever is greater, and reasonable attorneys' fees.  *See* N.Y. Arts & Cult. Aff. Law § 25.33.

---

[3] TickPick LLC, Comment Letter on Proposed Rule on Unfair or Deceptive Fees (Nov. 9, 2023), https://www.regulations.gov/comment/FTC-2022-0069-6078.

**COUNT II**
**Violation of General Business Law § 349**
**(On Behalf Of The New York Subclass)**

44.     Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

45.     Plaintiff brings this claim individually and on behalf of the members of the Nationwide Class and New York Subclass against Defendant.

46.     New York's General Business Law § 349 prohibits deceptive acts or practices in the conduct of any business, trade, or commerce.

47.     Defendant committed deceptive acts and practices by misleadingly and deceptively obscuring the itemization of the extra charges it adds to its ticket prices.

48.     Defendant committed deceptive acts and practices by misleadingly and deceptively hiding its "service charge" under the label of "Taxes & Fees" while charging no tax, and by hiding the itemization of the extra charges added to the tickets' prices.  Accordingly, Plaintiff and members of the Class and Subclass were misled into believing that the extra charges added to the ticket price were representative of taxes and fees, when in actuality, only a "service charge" was added.

49.     Worse yet, Defendant never affirmatively discloses on the final checkout screen that the amount of Tax charged is $0, so consumers do not notice that the original "Taxes & Fees"  representation was false and misleading.

50.     Defendant's deceptive acts and practices were directed at consumers.

51.     Defendant's deceptive acts and practices are misleading in a material way because they deliberately make the itemization of extra charges harder to notice, and fundamentally misrepresent the additional costs imposed by Defendant on ticket purchasers by masking Defendant's "service charge" as, in part, a tax on the ticket purchase.

52.     As a direct and proximate result of Defendant's false, misleading, and deceptive representations, Plaintiff and members of the Class and Subclass were injured in that they would not have purchased the tickets, or would have paid substantially less for them, but for Defendant's obfuscation of the extra charges in a misleading "Taxes & Fees" representations.

53.     On behalf of himself and the New York Subclass, Plaintiff seeks to recover their actual damages or fifty dollars per violation, whichever is greater, three times actual damages, and reasonable attorneys' fees.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the members of the Nationwide Class and New York Subclass, prays for judgment as follows:

(a)     For an order certifying the Classes under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Classes and Plaintiff's attorneys as Class Counsel to represent the Classes;

(b)     For an order declaring that Defendant's conduct violates the statutes referenced herein;

(c)     For an order finding in favor of Plaintiff and the Classes on all counts asserted herein;

(d)     For compensatory and statutory damages in amounts to be determined by the Court and/or jury;

(e)     For prejudgment interest on all amounts awarded;

(f)     For an order of restitution and all other forms of equitable monetary relief;

(g)     For injunctive relief as pleaded or as the Court may deem proper; and

(h)     For an order awarding Plaintiff and the Classes their reasonable attorneys' fees and expenses and costs of suit.

1

Dated:  October 15, 2024

Respectfully submitted,

2

**BURSOR & FISHER, P.A.**

3

By:_____*/s/ Stefan Bogdanovich*_____
        Stefan Bogdanovich

4

5

Stefan Bogdanovich (State Bar No. 324525)
1990 North California Blvd., 9th Floor
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
Email:  sbogdanovich@bursor.com

6

7

8

9

Philip L. Fraietta (State Bar No. 354768)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile:  (212) 989-9163
E-Mail: pfraietta@bursor.com

10

11

12

13

*Attorneys for Plaintiff*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28